# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **KELLY RENEA BROWN** | **CASE NO. 3:19-CV-01060** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JAMES CONSTRUCTION GROUP L. L. C., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to remand [doc. # 6] filed by plaintiff Kelly Renea Brown.   The motion is opposed.   For reasons explained below, it is recommended that the motion be DENIED, and that plaintiff's claims against defendant, Travis Owens, be DISMISSED, WITHOUT PREJUDICE.

### Background

On July 9, 2018, Michael Judd Brown was employed by James Construction Group, L.L.C. ("JCG") as a construction worker at the U.S. Highway 80 railroad bridge near Swartz, Louisiana when he fell from the bridge, but was arrested/saved by a safety line.   (Petition).   In the wake of the incident, JCG and its safety supervisor, Travis Owens, who both knew that Brown had received prescribed medication for a prior back injury, determined that Brown should not return to the bridge "while he was prescribed this medication."   *Id*.   Nonetheless, just three days later, on July 12, 2018, Brown was instructed to return to the U.S. Highway 80 railroad bridge worksite, where he again fell off the bridge.   *Id*.   Tragically, however, this second fall proved fatal as it occurred after Brown had detached himself from the safety line to move a sheet of plywood.   *Id*.

On July 8, 2019, Brown's surviving spouse, Kelly Renea Brown, filed the instant wrongful death and survival action, individually, and on behalf of Brown's minor child, A.B.,

against Brown's employer, JCG, and JCG's safety supervisor, Travis Owens.   *Id.*   In an attempt to circumvent the exclusivity provision of the Louisiana Workers' Compensation Act ("LWCA"), La. R.S. 23:1021, *et seq*., plaintiff alleged that the fall was substantially certain to occur, i.e., that defendants intended to cause Brown's accident, because defendants:   1) knew that Brown was taking prescription medication for his prior back injury, yet returned him to the hazardous bridge construction work only three days after Brown's previous fall, and 2) failed to provide requisite safety equipment such as a continuous tie-off line as required by OSHA. (Petition, ¶ 14).   Plaintiff seeks recovery for causally-related wrongful death and survival damages.

Plaintiff originally filed this suit in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana.   On August 14, 2019, however, both defendants removed the suit to federal court on the lone basis of diversity jurisdiction, 28 U.S.C. § 1332.   (Notice of Removal).   JCG's sole member is Primoris Service Corporation which is a Delaware corporation, with its principal place of business in Texas.   *Id.*, ¶ 8.   Therefore, JCG is a citizen of both Texas and Delaware.   *Id.*   However, both plaintiff and defendant, Owens, are Louisiana domiciliaries.   *Id.*, ¶¶ 7, 9.   To overcome the patent lack of diversity between plaintiff and Owens, defendants argued in their notice of removal that plaintiff has no reasonable possibility of recovery against the non-diverse, forum-domiciled defendant, and therefore, he was improperly joined in an attempt to defeat federal subject matter and removal jurisdiction.   *See* Notice of Removal.

Plaintiff disagrees with defendants' assessment of the vitality of her intentional tort claim against Owens, and on September 13, 2019, filed the instant motion to remand for lack of subject matter jurisdiction.   On October 8, 2019, defendants filed their opposition to the motion to remand.   [doc. # 11].   Plaintiff filed her reply brief on October 15, 2019.   [doc. # 12].

2

Therefore, the matter is ripe.

<u>**Analysis**</u>

A defendant may remove an action from state court to federal court, provided the action is one in which the federal court may exercise original jurisdiction. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)). The removing defendant bears the burden of establishing federal subject matter jurisdiction and ensuring compliance with the procedural requirements of removal. *Id.* Because federal courts are courts of limited jurisdiction, a suit is presumed to lie outside this limited jurisdiction unless and until the party invoking federal jurisdiction establishes to the contrary. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citation omitted). The removal statutes are strictly construed in favor of remand. *Manguno, supra*.

Removing defendants invoked this court's subject matter jurisdiction via diversity, which requires an amount in controversy greater than $75,000, and complete diversity of citizenship between plaintiff and defendants, 28 U.S.C. § 1332(a). Plaintiff is seeking recovery for wrongful death and survival damages, and therefore, it is manifest that the amount in controversy exceeded $75,000 at the time of removal. Accordingly, the sole jurisdictional issue is whether the parties are completely diverse.

The diversity jurisdiction statute presupposes a civil action between "citizens of different states," where all plaintiffs are diverse from all defendants. 28 U.S.C. § 1332; *Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 139-140 (5th Cir. 1990). Plainly, there is diversity of citizenship between plaintiff and defendant, JCG. Defendants further contend that the court need not consider the citizenship of the non-diverse party, Owens, because he is not properly joined as a defendant herein.

To disregard the citizenship of the non-diverse defendant, defendants must establish that

3

Owens was but an improperly joined or nominal party.[1]   "The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity."   *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir.2005).   Moreover, the burden of persuasion on a party claiming improper joinder is a "heavy one."   *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir.2007) (citation omitted).   The focus of the improper joinder inquiry must be "on the joinder, not the merits of the plaintiff's case."   *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir.2004) (en banc).

There are two ways to establish improper joinder:   "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."   *Smallwood, supra* (citing *Travis v. Irby*, 326 F.3d 644, 646-647 (5th Cir.2003)).   In the case *sub judice*, there are no allegations of actual fraud. Accordingly, the court must determine "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."   *Id.*   Thus, "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder."   *Id.* (citing *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n4 (5th Cir.2000)).

The court may resolve the improper joinder issue in one of two ways:   1) the court can

---

[1]  It is not clear whether plaintiff also invoked the procedural bar against removal of a diversity suit that includes a forum-domiciled defendant.   28 U.S.C. § 1441(b)(2).   Regardless, as with a non-diverse defendant, the foregoing procedural defect may be overcome if the removing defendant establishes that the forum-domiciled defendant was improperly joined.   *See e.g., Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 310 (5th Cir. 2002) (applying improper joinder to support removal of a case where the parties were diverse, but a forum-domiciled defendant was present).

look at the allegations of the complaint to determine whether the complaint states a claim against the non-diverse defendant under state law (Fed.R.Civ.P. 12(b)(6) analysis);[2] or 2) in the few cases where the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood*, *supra*. However, the "summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id*.[3] In the process, the court must consider "all unchallenged factual allegations" in the light most favorable to the plaintiff. *Travis*, *supra*. Any contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Id.* If the removing defendant fails to establish improper joinder, then diversity is not complete and remand is required. *Id.* The existence of even a single valid cause of action against a non-diverse defendant requires remand of the entire case to state court. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018) (citation omitted).

Of course,

> [w]hen the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, *and that showing is equally dispositive of all defendants rather than to the in-state defendants alone,* there is no improper joinder. Rather, in such a case, there is only a lawsuit lacking merit. In other words, there is no improper joinder if a defense compels the same result for the resident and nonresident defendants, because this would simply mean that the plaintiff's case [is] ill-founded as to all the defendants.

*Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 283–84 (5th Cir.2007) (citing *Smallwood, supra*) (internal quotation marks omitted).

---

[2] To survive a 12(b)(6) motion to dismiss, the "[f]actual allegations [in the plaintiff's petition] must be enough to raise a right to relief above the speculative level," which means that the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

[3] In other words, facts that can be easily disproved if not true. *Id.*

Here, defendants appear to argue *both* that the complaint fails to state a claim for relief against Owens, *and* that, after piercing the pleadings and conducting a summary inquiry, plaintiff has no reasonable basis of recovery against the in-state defendant.   It is clear, however, that a court may choose either of the two analyses for improper joinder, but it must use one and only one of them, not neither or both.   *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th Cir.2016) ("*IEVM*").   In this case, the court will conduct the improper joinder analysis by piercing the pleadings.[4]

Injuries occurring in the workplace are governed by the LWCA.   "[W]ith the exception of intentional acts, workers' compensation is the exclusive remedy available to an 'employee or his dependent' for work-related injuries and illnesses."   *Deshotel v. Guichard Operating Co.*, 916 So.2d 72, 75 (La. 2004) (citing La. R.S. § 23:1032).   The LWCA precludes suits against both co-employees and employers arising out of negligence or strict liability in the workplace. La. R.S. §§ 23:1031-1032; *see Bazley v. Tortorich*, 397 So.2d 475, 479 (La. 1981) ("The exclusive remedy rule prevents an employee from seeking recovery in tort for a work-related injury negligently caused by his co-employee."); *McCorkle v. Gulf State Utils. Co.*, 457 So.2d 682, 685 (La. App. 1st Cir. 1984) (suits under Civil Code Article 2317 are barred by the LWCA); *Certain v. Equitable Equip. Co.*, 453 So.2d 292, 297–98 (La. App. 4th Cir. 1984) (dismissal is proper whether the suit be "one in negligence, products liability or strict liability"); *Reeder v. Laks Corp.*, 555 So.2d 7, 9 (La. App. 1st Cir. 1989) (the LWCA bars suits for work-related injuries based in negligence or strict liability).   Hence, for plaintiff to recover against Owens, her claim must fall under the intentional act exception of the LWCA.   *See* La. R.S. § 23:1032(B) ("Nothing in this Chapter shall affect the liability of the employer, or any . . . employee of such

---

[4]  Indeed, because the allegations in the petition are the same as to both defendants, the court cannot find improper joinder on the basis of the complaint alone because that would mean that plaintiff's entire case lacks merit, thereby requiring remand pursuant to *Smallwood*.

employer or principal to a . . . liability, civil or criminal, resulting from an intentional act.").

Since *Bazley, supra*, the Louisiana Supreme Court has "narrowly construe[d] the intentional act exception." *Reeves v. Structural Pres. Sys.*, 731 So.2d 208, 211 (La. 1999). The meaning of "intent" within the context of this exception is that the defendant "either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Bazley*, 397 So.2d at 481. Therefore, "intent has reference to the consequences of an act rather than to the act itself. Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional." *White v. Monsanto Co.*, 585 So.2d 1205 (La. 1991).

"'Substantially certain to follow' requires more than a reasonable probability that an injury will occur and 'certain' has been defined to mean 'inevitable' or 'incapable of failing.'" *Reeves*, 731 So.2d at 213. It requires more than a reasonable probability, even more than a *high probability,* that an accident or injury will occur. *Bridges v. Carl E. Woodward, Inc.,* 663 So.2d 458, 463 (La. App. 4th Cir.1995). Furthermore, "knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing." *Id.* (quoting *Armstead v. Schwegmann Giant Super Mkts., Inc.*, 618 So.2d 1140, 1142 (La. App. 4th Cir. 1993)). In addition, "violation of a statute alone is not per se such an intentional act . . ." *Mott v. River Parish Maint., Inc.*, 432 So.2d 827, 832 (La. 1983). Thus, the Louisiana Supreme Court has consistently rejected "the intentional act argument when an employer has violated safety rules." *Cole v. Dep't of Pub. Safety & Corr.*, 825 So.2d 1134, 1147 (La. 2002) (citing *Reeves*, 731 So.2d at 211–12).

The undersigned emphasizes that neither the failure to provide safety equipment, nor the

failure to adhere to OSHA safety regulations constitute "intentional acts" sufficient to strip an employer/co-employee's immunity accorded by the LWCA. *Bridges,* 663 So.2d at 463. Even, an employer/co-employee's knowledge that similar injuries had occurred in the past does not establish that a related injury was "substantially certain" to occur in the future. *See Snow v. Lenox Int'l,* 662 So.2d 818, (La. App. 2 Cir. 1995).

Applying the foregoing principles here, the court observes that there are no allegations or facts to suggest that Owens consciously desired Brown to fall to his death. Thus, the issue is whether Owens knew that Brown's fall and death were substantially certain to occur as a result of Owens' actions or inaction. As recited earlier, plaintiff contends that Owens (and JCP for that matter) is subject to liability for an intentional tort on "two separate grounds" because: 1) he knew that Brown was taking prescription medication for his prior back injury, yet returned him to the hazardous bridge construction work only two days after Brown's previous fall, and 2) he failed to provide requisite safety equipment such as a continuous tie-off line as required by OSHA. *See* Pl. M/Remand, Memo., pgs. 1-2.

However, the court is not persuaded that defendant's conduct can be compartmentalized into separate acts that independently suffice to state an intentional tort claim. To illustrate this point, plaintiff's petition is devoid of allegations that, apart from Brown, any other worker experienced any mishaps on the railroad bridge. Therefore, the fact that other workers apparently performed their duties without incident precludes a finding that Owens knew that it was inevitable or incapable of failing that a worker would fall to his or her death because of the alleged lack of a continuous tie-off line. Rather, it must have been a characteristic unique to Brown, such as his use of prescription medication, plus his assignment to a dangerous worksite, *together* with the absence of a continuous tie-off line that made it substantially certain that he would fall to his death.

In support of remand, plaintiff submitted evidence that Owens (and JCP) knew or should have known that there was no continuous tie-off line in the area where Brown sustained his fatal fall.   (Affidavit of Cody Parker, and JCP Fall & Prevention Standard; Pl. Reply Brief, Exhs. 1-2).[5]   However, defendants adduced uncontroverted evidence that Owens was not responsible for Brown's work assignment on the day of his fatal fall.   (Affidavit of Travis Owens; Defs. Opp. Brief, Exh. 1).   In addition, Brown personally assured Owens that he never took medication when he was working and that it did not affect his ability to work.   *Id.*   Moreover, Brown's post-incident drug screen and metabolite drug screen taken after his July 9 fall were both negative.   *Id.*

In short, Owens had no basis to believe that Brown would be working at dangerous heights on the day in question while also under the influence of prescription medication.   In the absence of the foregoing circumstances, there is no reasonable possibility of finding that Owens knew that it was substantially certain, i.e., inevitable or incapable of failing that Brown would fall to his death merely because of the absence of a continuous tie-off line.[6]   Consequently, plaintiff does not enjoy a viable intentional tort claim against Owens, and the LWCA precludes

---

[5] Owens stated that he ensured that a continuous tie-off was available at the worksite, including the area where Brown fell from the bridge.   (Affidavit of Travis Owens; Defs. Opp. Brief, Exh. 1).   For purposes of this motion, however, the court must construe disputed facts in favor of remand.

[6] In support of her motion, plaintiff cited an appellate court decision in which the court upheld a finding of liability against an employer for an intentional tort where the plaintiff-worker fell off a roof after he had repeatedly complained to the employer's agent that the roof was wet and slippery, and after he had slipped and almost fallen off previously.   *Clark v. Div. Seven, Inc.*, 776 So.2d 1262 (La. App. 4th Cir. 2000).   Here, however, plaintiff does not allege that Brown repeatedly complained to Owens about dangerous conditions on the bridge.   *See Vanderlick v. Bayer Material Sci., LLC*, No. 05-276, 2005 WL 8155957, at *6 (M.D. La. Nov. 7, 2005) (distinguishing *Clark, et al.*).   Moreover, Owens did not order Brown to return to work on the bridge after his first fall.

recovery against Owens under any other tort theory of recovery.[7]    Therefore, defendants have established that Owens was improperly joined and that his presence must be disregarded for purposes of subject matter and removal jurisdiction.

Under the present circumstances, the court lacks subject matter jurisdiction to entertain the action against Owens, thereby compelling his dismissal, without prejudice.    *IEVM, supra.*[8] The remaining parties are completely diverse, with no forum-domiciled defendant.    The court may exercise subject matter and removal jurisdiction.    28 U.S.C. §§ 1332 and 1441.

## Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that plaintiff's motion to remand [doc. # 6] be DENIED.

IT IS FURTHER RECOMMENDED that plaintiff's claims against defendant, Travis Owens, be DISMISSED, WITHOUT PREJUDICE, for lack of subject matter jurisdiction.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties

---

[7]  The court's determination as to Owens does not necessarily extend to JCP, and therefore, does not transgress *Smallwood*.    *See McDonal v. Abbott Labs.*, 408 F.3d 177, 184 (5th Cir.2005) (*Smallwood* is implicated only when the common defense asserted would be equally dispositive as to *all* of the defendants)); *Boone v. Citigroup, Inc.*, 416 F.3d 382, 391 (5th Cir.2005) (*Smallwood* did not apply because the limitations defense as to the resident defendants did not equally and necessarily compel dismissal of all claims against all diverse defendants).  Here, the court has relied on evidence demonstrating Owens' lack of knowledge and involvement of certain key facts that led to Brown's fatal work assignment.    In contrast, JCP still faces potential liability if the evidence demonstrates that it knew that Brown was taking prescription medication that affected his work performance, it nonetheless assigned him to work at dangerous heights, and that it knowingly failed to provide him with requisite safety equipment, despite its awareness that he had fallen the last time he was at the jobsite, and was only saved by the presence of the safety line.    In other words, plaintiff states a claim for relief against JCP.    If she did not, then the entire suit would prove meritless, thereby necessitating remand.

[8]   However, "[a]s the claim or claims against the nondiverse defendant must be dismissed without prejudice, the plaintiff is not barred by *res judicata* from refiling those claims [against the nondiverse defendant] in state court if he so desires."    *IEVM*, 818 F.3d at 202 n.25.

have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 20th day of November 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE